IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RICKIE R. HORTON and CINDY L. HORTON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 05-CV-4101-JPG |
| FIRST STATE BANK OF ELDORADO and GLENN DEFUR, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 5) and accompanying memorandum of law (Doc. 10), to which plaintiffs have responded (Doc. 12) and defendants have replied (Doc. 13). For the following reasons, this motion will be **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

Plaintiffs Rickie and Cindy Horton brought an eleven-count complaint against the First State Bank of Eldorado ("First State") and Glenn DeFur ("DeFur"), a First State employee, principally alleging violations of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*., as amended by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639. The final two counts of the complaint arise under state law. Defendants move for dismissal of plaintiffs' federal claims and request that the Court decline to exercise supplemental jurisdiction over the remaining state court claims.

This action stems from a mortgage transaction entered into between plaintiff Rickie Horton

and First State. In June 2004, the Hortons had oral discussions with DeFur that culminated in the closing of one loan on June 30, 2004. This loan was evidenced by a promissory note and secured by the Hortons' primary residence. Set to have surgery on June 29, 2004, Mrs. Horton quitclaimed her interest in the residence to her husband on June 28.[1] Because she was recovering from her surgery and had quitclaimed her interest in the residence, Mrs. Horton did not sign the note giving rise to this action and did not attend the closing. Despite this fact, Mrs. Horton is a named plaintiff in this action and she seeks both rescission of the note and statutory damages.

When Mr. Horton met with DeFur at the closing on June 30, DeFur presented him with disclosures required under federal law, and Mr. Horton signed a promissory note. At some point during the closing process, Mr. Horton realized that almost all of the proceeds of the loan were to be used to pay off various outstanding loans he had with First State, and that he would only be receiving $300.00 cash from the transaction, despite the fact that the amount borrowed was set to be $37,276.18. Mr. Horton convinced DeFur to change the terms of the loan so that he would receive at least $1,500.00 cash at closing. Accordingly, the relevant loan documents were redrafted to reflect the agreed-upon change. All the documents signed during the closing were dated June 25, though the closing took place on June 30.

First State disbursed the proceeds of the loan, totaling $ 38,776.18 – reflecting the additional $1,500.00 cash requested by Mr. Horton – on June 30, the day of closing. Mr. Horton and First State were the only parties to the note. On March 28, 2005, both Mr. and Mrs. Horton mailed letters to First State purporting to exercise their right to rescind the loan agreement. In those letters, the

---

[1] The impetus for Mrs. Horton's decision to quitclaim her interest in the residence is a matter of dispute.

Hortons demanded that First State release its mortgage within 20 days of the receipt of the letter. First State did not comply with these requests. Plaintiffs argue First State and DeFur violated TILA and HOEPA by fraudulently inducing Mrs. Horton to quitclaim her interest in their residence, fraudulently inducing Mr. Horton to backdate the loan documents, by backdating the documents, by failing to provide the requisite TILA and HOEPA disclosures three days *prior* to the consummation of the transaction, and by failing to rescind the transaction pursuant to the Hortons' requests

## ANALYSIS

### A.   Standard on Summary Judgment

The defendants have presented matters outside the pleading in their motion and agree that their motion to dismiss should be treated as one for summary judgment. See F.R.Civ.P. 12(b). Both sides have submitted affidavits and other documents, and have been given the opportunity to present the material they feel is relevant to this motion. See F.R.Civ.P. 12(b). Therefore, the Court will treat defendants' motion to dismiss as one for summary judgment.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**B.     TILA and HOEPA**

TILA's stated purpose is to ensure that consumers make informed decisions regarding their use of credit. 15 U.S.C. § 1601. To effectuate TILA, the Federal Reserve Board, pursuant to authority granted by Congress, has promulgated rules and regulations collectively known as Regulation Z. 12 C.F.R. § 226.1 *et seq.* TILA requires lenders to make certain disclosures to consumers with whom they enter various types of credit agreements. See 15 U.S.C. §§ 1635 & 1639. Among other things, TILA requires lenders to furnish consumers with a written statement summarizing their loan transaction and related finance charges. 15 U.S.C. § 1605(a); *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). One important disclosure relevant here is of the consumer's right to rescind a credit transaction secured by the consumer's principal residence. 15 U.S.C. § 1635; 12 CFR § 226.23. Typically, this right to rescind extends for three days after the consummation of the transaction or the delivery of the notice of right to cancel, whichever is later.

15 U.S.C. § 1635; *Carmichael v. The Payment Center, Inc.*, 336 F.3d 636, 643 (7th Cir. 2003).  If a creditor materially breaches its disclosure obligations under TILA, the right to rescind extends for three years after the transaction's consummation.  15 U.S.C. § 1635(f); *Carmichael*, 336 F.3d at 643.

Congress enacted HOEPA as an amendment to TILA; it only applies to a subset of loans, those made at higher interest rates or with excessive costs and fees.  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 204 (3d Cir. 2005).  HOEPA loans are subject to special disclosure requirements under 15 U.S.C. § 1639;  these disclosures must be made "not less than 3 business days prior to consummation of the transaction."  15 U.S.C. § 1639(b)(1).

Congress has provided for civil liability against those creditors who violate TILA, allowing recovery for both actual damages and statutory damages.  15 U.S.C. § 1640.  When credit transactions are secured by a consumer's principal residence, § 1640 allows a consumer to recover statutory damages totaling  twice the amount the consumer paid in finance charges, so long as the amount is less than $2,000.00.  When there are multiple obligors in a covered transaction, § 1640(d) prohibits double recovery.

### C. DeFur's Personal Liability

Initially, the Court will address DeFur's claim that he cannot be held personally liable for violations under TILA or HOEPA.  Section 1640  provides, in relevant part, that "any creditor who fails to comply with any requirement" imposed by TILA or HOEPA "with respect to any person is liable to such person."  15 U.S.C. § 1640(a).  For purposes of this section, a creditor only refers

> to a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). The promissory note here (the evidence of indebtedness) is payable on its face to First State, not DeFur. (Doc. 1, pt. 2, ex. J). Therefore, DeFur is not a creditor under § 1602(f). As such, DeFur cannot be held civilly liable under 15 U.S.C. § 1640. To the extent plaintiffs seek relief against DeFur individually pursuant to § 1640, defendants' motion to dismiss is **GRANTED**.

  **D.** **The Initial Promissory Note**

Plaintiffs have not drafted the complaint in this case in an accessible manner. Its lack of clarity is due to the distinction they draw between the "initial" promissory note and the "replacement" note. Plaintiffs referenced the "initial" note in Counts I, III, and IV, and seem to base Count II on this note as well, though they did not specifically refer to the "initial" note in the count. It is unclear whether Count IV seeks relief on account of First State's alleged violations regarding the initial note or the replacement note. What is clear, is that First State disbursed funds pursuant to one note, the so-called replacement note.

Defendants make a number of arguments for dismissal in their motion. They claim Mrs. Horton is an improper party to this suit, that no liability can be based on the "initial" note, that the mortgage here is not covered by HOEPA, and that they abided by the disclosure requirements applicable to the transaction. As a general proposition, the Court agrees that liability in this case cannot be premised on the initial promissory note. Defendants claim the first four counts of the complaint are based on the "initial" note and must be dismissed. For clarity's sake, the Court will address these counts one at a time.

In Counts I and IV, plaintiffs seek a court order rescinding the transaction and voiding the mortgage. Defendants claim that both of these counts speak to the initial promissory note. The Court does not agree. Though plaintiffs refer to the initial promissory note in Count IV, the Court

believes that Count IV sets forth a claim for relief based upon the replacement note, and rejects defendants' assertions to the contrary. Hereafter, the Court will refer to the replacement note as the Note. Though it is not exactly clear, the Court's believes Count I is based on the initial note. As this note never evidenced a debt or security interest and because a transaction relating to this note was never completed, there is nothing to be released or rescinded. Thus, liability cannot be predicated upon the initial note. In any event, if Count I is indeed based on the Note, it is redundant with Count IV. Therefore, the Court **DISMISSES** Count I.

The Court will dismiss Count II for similar reasons. In both Count II and Count V, plaintiffs seek statutory damages against defendants for First State's failure to release its security interest in the Hortons' residence after plaintiffs attempted to rescind the transaction. These Counts are practically verbatim. As in Count I, plaintiffs' attempt to predicate liability on defendants' actions regarding the initial note is misguided. Though defendants prepared two sets of notices and disclosures, First State disbursed funds pursuant to one note and is only party to one mortgage. No security interest was formed regarding the initial promissory note. Plaintiffs cannot recover for First State's failure to release a security interest that does not exist. Even if Count II is predicated on the Note itself, it is redundant because of Count V. The Court realizes that plaintiffs seek to recover $4,000.00 in statutory damages under Count II. However, this attempt to recover separate damages for both Mr. and Mrs. Horton is foreclosed by § 1640(d). Therefore, the Court **DISMISSES** Count II.

Count III presents a slightly more complicated question. In Count III plaintiffs seek $4,000.00 in statutory damages for defendants' failures to make disclosures pursuant to § 1639 in reference to the initial note. For reasons similar to Counts I and II, the Court will dismiss Count III

as well. Plaintiffs assert liability under § 1639(b)(1) for defendants' failure to make the disclosures required under § 1639(a). Creditors must make these disclosures "not less than 3 business days prior to consummation of the transaction." 15 U.S.C. § 1639(b)(1). A transaction is consummated when "a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(13). Here, no transaction was ever consummated regarding the initial note, because plaintiffs never became obligated under the initial note. As such, any failure to give notice regarding that transaction is not actionable. Regardless, this Count must be dismissed for the same reasons as Counts VI through IX, which the Court discusses below. Therefore, the Court **DISMISSES** Count III.

  **E.**  **The Note and Mortgage**

The Court is left to deal with defendants' additional grounds for dismissal on the remaining counts, IV through XI. In Count IV, Mr. Horton seeks rescission of the transaction and an order directing First State to release its security interest in his residence pursuant to § 1635 (a) and (b). In their motion to dismiss, defendants claim that Count IV should be dismissed because First State was not required to provide TILA disclosures before the parties consummated the transaction. The Seventh Circuit has rejected this argument, and it is contradicted by the plain language of Regulation Z. *See* 12 C.F.R. § 226.17; *Spearman v. Tom Wood Pontiac-GMC, Inc.*, 312 F.3d 848, 849 (7th Cir. 2000). Horton did not address the timing of the disclosures in his response, but asserted his entitlement to the relief requested on other grounds. First, he claims that First State's disbursement of the loan proceeds on June 30 was itself an actionable violation of TILA. Second, he claims the backdating of the loan documents constituted a fraudulent act in the course of First State's scheme to defraud him and his wife. Horton claims these two violations were sufficient to extend his right to rescind the transaction three years after consummation. *See* 15 U.S.C. § 1635(f). In their reply,

defendants basically concede that the premature disbursement of funds on June 30 was a violation of TILA. However, they characterize this action as merely a technical violation insufficient to allow rescission of the transaction.

On the premature disbursement issue, 12 C.F.R. § 226.23(c) is instructive. That section provides that "unless a consumer waives the right of rescission . . . no money shall be disbursed other than in escrow . . . until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded." First State admits it disbursed funds on June 30. (DeFur afdvt. ¶ 13). Clearly, this disbursal violated § 1635 and 226.23(c). As such, Mr. Horton is entitled to, at the least, statutory damages for this violation. That the disbursal violated 226.23(c) does not necessarily mean that the rescissory period was extended. *See Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896 (3d Cir. 1990). Horton claims that the premature disbursal coupled with the erroneous dating of the notice of right to cancel and other documents is sufficient to merit extension of the rescissory period under § 1635(f). This contention finds some support in the case law. *See e.g., Taylor v. Domestic Remodeling, Inc.*, 97 F.3d 96, 99 (5th Cir. 1996) (finding that disbursal during the rescission period and the misdated notice to rescind constituted material failure to disclose warranting rescission); *see also Cox v. First Nat. Bank of Cincinnati*, 751 F.2d 815, 818 (6th Cir. 1985); *Curry v. Fidelity Consumer Discount Co.*, 656 F.Supp 1129, 1131 (E.D. Pa. 1987). In response, First State argues that the premature disbursal here was not sufficiently material to warrant rescission, citing *Smith v. Fidelity Consumer Discount Co.* There, the Third Circuit held that a creditor's premature disbursal of loan proceeds "neither itself constituted a breach of the material disclosure requirement nor directly or indirectly impugned any of the material disclosures." *Smith*, 898 F.2d at 904. The court distinguished violations of § 226.23(b) from violations of

226.23(c), finding that only the former extend the right to rescind. *Id*. In effect, *Smith* holds that a premature disbursal does not constitute, by itself, a failure to disclose meriting rescission. The Court finds that court's reasoning persuasive. This case is distinguishable from *Smith*, however, because Horton has alleged various acts of fraudulent and deceptive conduct on the part of DeFur as additional grounds for the rescissory relief he requests. The affidavits submitted by the parties are clearly self-serving. Despite this fact, the Court finds that Mr. Horton has created questions of material fact regarding DeFur's actions in the course of this transaction. What representations DeFur made to the Hortons, what motivated the backdating of the documents and what motivated Mrs. Horton to quitclaim her interest in the Hortons' residence are all disputed material facts that go to Mr. Horton's allegations of fraudulent and deceitful conduct. A jury could reasonably find that DeFur's actions leading up to and during the closing, including the backdating of documents, were sufficient, when combined with the premature disbursal, to amount to a violation warranting rescission. Therefore, defendants' motion to dismiss Count IV is **DENIED**.

In their motion to dismiss, defendants did not include any specific arguments on Count V. In that Count, Horton seeks statutory damages for First State's failure to rescind the transaction pursuant to his request. Because the Court has determined that there are disputed issues of fact going to the propriety of rescission here, the Court **DENIES** defendants' motion to dismiss Count V.

Defendants argue Counts VI through IX must be dismissed because plaintiffs cannot show that their mortgage falls under HOEPA. See 15 U.S.C. §§ 1602(aa) & 1639. A mortgage falls under § 1639 if, among other things, "the total points and fees payable by the consumer at or before closing will exceed the greater of . . . 8 percent of the total loan amount; or . . . $400." 15 U.S.C.

§ 1602(aa)(1)(B)(ii). Defendants claim Mr. Horton only paid fees totaling $175.00. Horton claims his payment of $8,303.40 on his existing unsecured debt with First State is properly considered a point or fee as that phrase is used in § 1602(aa). "Points and fees" is defined in Regulation Z, with reference to the definition of finance charge in 12 C.F.R. § 226.4(a) and (b). 12 C.F.R. § 226.32. Section 226.4(b) defines a finance charge as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). Examples of finance charges include, among other things "service, transaction, activity, and carrying charges. . . [p]oints, loan fees, assumption fees, [and] finder's fees." Plaintiffs emphasize that § 226.4 does not exclude repayments of existing debt from the definition of finance charge. This argument is of little import here. Defendants claim that the debt consolidation that took place did not really cost plaintiffs anything because their previous obligations to First State were simply rolled over into the new mortgage. Further, they argue that if Congress had intended debt consolidation and the repayment of existing debt to be included in the definition of finance charge, they would have listed it, or something like it, in the examples of what amounts to a finance charge in § 226.4(b). The Court agrees. Though the list in § 226.4(b) is not definitive, whether a charge is similar to those listed in the Regulation and the statutes is certainly relevant to the determination of whether a particular charge should be included in that definition. Facially, the consolidation here bears little resemblance to the examples of finance charges listed in Regulation Z.

The Third Circuit addressed a question similar to this in *Smith*. In that case, plaintiffs claimed that the defendant failed to calculate the finance charges associated with their loan accurately because it failed to include amounts paid from the loan proceeds to cover the debtor's

previously owing taxes and prior mortgages. 898 F.2d at 905. The court concluded that such liens and mortgages were not finance charges. *Id*. at 905-06 ("While the statutory language 'charges . . . imposed directly or indirectly by the creditor as an incident to the extension of credit' is extremely broad, this language is not unlimited."). This finding was based upon a careful reading of §§ 226.4(b) and 226.20. First, the court found that the payment of liens and prior mortgages bore little resemblance to the examples provided in § 226.4(b), supporting the inference that these payments were not properly considered finance charges. Continuing, the court held that the

> inference is further supported by the language of § 226.20(a), which provides in pertinent part:
>> (a) Refinancing. A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation.
>
> The necessary implication from the inclusion of the unearned portion of the old finance charge within the new finance charge -- without any mention of the prior debt being part of the new finance charge -- is that the refinanced debts are not 'finance charges' within the meaning of TILA.

*Id*. 906. The Court finds the Third Circuit's reasoning persuasive in this case. Therefore, the Court holds that the repayments of the existing indebtedness here did not constitute finance charges, and as such, should not be considered a "point or fee" as that phrase is used in § 1602(aa). Other than the amount of consolidated debt just discussed, plaintiffs do not claim that any other amount paid at or before closing is properly considered a point and fee. The Court is left with DeFur's affidavit and defendants' interpretation of the disclosure statements given to Mr. Horton, and their argument that Mr. Horton only paid $175.00 in finance charges. Aside from the above, plaintiffs have not contested this calculation. Therefore, the Court finds that the transaction here does not fall under HOEPA. Defendants' motion to dismiss is **GRANTED** with respect to Counts VI, VII, VIII and IX.

### F. Supplemental Jurisdiction

In their motion, defendants request the Court to decline supplemental jurisdiction over plaintiffs' state law claims. As the Court did not dismiss all of plaintiffs' federal claims, the only ground for declining to exercise jurisdiction argued in defendants' motion is under 28 U.S.C. § 1367(c)(2). Under that section, this Court may decline to exercise supplemental jurisdiction if the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Defendants have not convinced the Court that the state law claims here substantially predominate over the federal claims. As such, the Court will not decline to exercise supplemental jurisdiction over plaintiffs' state law claims. Though the Court dismissed Mrs. Horton's federal law claims, she remains a plaintiff in the remaining state law claims. Defendants did not specifically address this issue in their motions Therefore, to the extent defendants moved to dismiss Mrs. Horton from these claims, their motion is **DENIED**.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Doc. 5) is **GRANTED in part** and **DENIED in part** as follows: insofar as plaintiffs seek relief from DeFur in his individual capacity under federal law, defendants' motion is **GRANTED**; to the extent defendants request dismissal of Mrs. Horton as a plaintiff in the state law claims, defendants' motion is **DENIED**; Count I, II, III, VI, VII, VIII, and IX are **DISMISSED**.

**IT IS SO ORDERED.**

**Dated: February 9, 2006.**

/s/ J. Phil Gilbert
J. PHIL GILBERT
U.S. District Judge